[L. A. No. 18502.   In Bank.   May 17, 1943.]

BELLE LINNASTRUTH, Appellant, v. MUTUAL BENE-
FIT HEALTH & ACCIDENT ASSOCIATION (a Cor-
poration), Respondent.

Lyle W. Rucker for Appellant.

J. Edward Haley and De Lancey C. Smith for Respondent.

Horace T. Beverly and Keesling, Smith & Wayland, as Amici Curiae, on behalf of Respondent.

SHENK, J.—The plaintiff as beneficiary sued on contracts of accident insurance issued to her husband Frank Linnastruth. The trial court, sitting without a jury, rendered judgment for the defendant. The plaintiff appealed. The facts are without substantial conflict.

All of the transactions and events took place in 1940. On July 17, Linnastruth signed applications for two policies of accident insurance of $1,250 each and paid $13 as the initial premium on each policy. Each application contained the following as the first paragraph: "I, the undersigned, hereby make application to the Mutual Benefit Health & Accident Association, for policy form M.I.A. 50 on the annual basis. I understand and agree that this application shall not be binding upon the Association until the policy is issued to me."

The initial premiums were paid to the insurance solicitor, Abraham, who dated the applications July 20. On that day the applications and premiums were sent to the company's Los Angeles office, and by that office to the home office in Omaha, Nebraska, for approval of the policies. The applications arrived at the home office on August 1, were approved on August 2, and the two policies were issued, dated August 5, for a term commencing on the date of issue. On August 6, they were taken to Linnastruth's home at Hynes, California, where Linnastruth was lying unconscious from staphyloccic septicemia contracted from bodily injuries received in falls which had occurred on July 26 and 30. Linnastruth died on August 6, without regaining consciousness. The plaintiff had sent notice of the accidents to the association's Los Angeles office on July 30. The notice was received by the home office on August 2. On August 10, the defendant denied liability for the reason that the injuries which resulted in death occurred prior to the date of issuance of the policies. The trial court

for the same reason sustained the defense of nonliability interposed by the defendant.

There is no merit in the contention that coverage commenced from the date of the applications solely because at the time applications were made Abraham, the solicitor, said that it did. The plaintiff did not attempt to show by any evidence, except the remark made by Abraham, that the latter had any authority to bind the association as to the time when liability commenced. In addition to the agreement hereinbefore quoted, Linnastruth also expressly agreed in his application that the association was ''not bound by any statement made by or to any agent unless written'' in the application. It is conceded that the agent had no actual authority to bind the association on a contract of insurance, and the foregoing agreement gave notice that he had no such apparent authority. As noted, the applicant's agreement was that the applications should not be binding upon the association until the policies issued, and inasmuch as the applicant and the association were bound only by the written statements, the rights of the plaintiff depend solely upon the effect of that agreement.

The principle that parties may contract as they please so long as they do not violate the law or public policy is applicable to insurance contracts. (*Boyer* v. *United States F. & G. Co.*, 206 Cal. 273 [274 P. 57].) Nevertheless the plaintiff seeks to invoke the rule stated in *Goorberg* v. *Western Assurance Co.*, 150 Cal. 510, 515 [89 P. 130, 119 Am.St.Rep. 246, 11 Ann.Cas. 801, 10 L.R.A. N.S. 876]; *Fageol T. & C. Co.* v. *Pacific Indemnity Co.*, 18 Cal.2d 731, 747 [117 P.2d 661], and similar cases, that ''any uncertainty or ambiguity in a contract of insurance is to be interpreted most strongly against the insurer.'' The plaintiff insists that the language used in the applications is susceptible to the construction that upon issuance of the policies the liability of the association commences from the date of the applications, rather than from the date of the issuance. The plaintiff has not presented a case which holds that the rule invoked is applicable to accomplish the result sought by her. The holdings in the cases relied upon do not support or warrant a conclusion that the words of the applications mean anything more that they purport to state, namely, that liability of the association commences on the date of issuance. On reading the quoted stipulations of the applications the mind, expert or inexpert, is stopped short of any conclusion that there was

any authority for the oral representation of the solicitor. Any reader of the applications must be deemed to be placed with certainty on notice that coverage commenced not when the agent said it did, but upon the issuance of the policies. **[3]** An application for insurance is a proposal. A meeting of the minds is essential. And the proposal is not a completed contract until it is accepted by the insurer in the same terms in which the offer was made. If the acceptance modifies or alters any of the terms of the proposal, it must then in turn be accepted by the applicant to be effective as a contract. (*Burch* v. *Hartford Fire Ins. Co.*, 85 Cal.App. 542, 552 [259 P. 1108], and cases cited; *Beswick* v. *National Casualty Co.*, 206 Mo. App. 67 [226 S.W. 1031].)

The authorities relied upon by the plaintiff do not support her contentions. On the contrary they are consistent with the inevitable conclusion in this case. In *Toth* v. *Metropolitan Life Ins. Co.*, 123 Cal.App. 185 [11 P.2d 94], an application written and signed provided that the company should incur no liability under the application until it had been received, approved, and a policy issued, delivered, and the premium paid and accepted by the company in the lifetime of the applicant. The agent had represented that the applicant would be covered as soon as he was examined by the doctor. Two days after the examination the applicant died. No policy issued. In commenting on the provision in the application the court said: ''The application provides explicitly that no insurance on the life of decedent was to be in effect until the delivery of the policy and the payment in full of the first premium . . .'' If no insurance was to be in effect until issuance or delivery of the policy, the effective date of insurance coverage must coincide with the effective date of liability. To say that liability does not attach until a certain date, but when it does attach on that date, it attaches as of an earlier date, is to place a strained and unwarranted construction on the plain language employed. In *Stark* v. *Pioneer Casualty Co.*, 139 Cal.App. 577 [34 P.2d 731], the facts were sufficient to constitute negligence or estoppel on the part of the insurer. In *Hansen* v. *Farmers Auto. Inter-Ins. Exch.*, 139 Cal.App. 388 [34 P.2d 188], it was held that apparent authority in the soliciting agent to place in the application the date when liability should commence, did not authorize him to fix a date contrary to the provision of the application that the insurance

should become effective when the application was accepted by the home office. The court interpreted the language to indicate coincidence between the dates of acceptance and liability.

In *Beswick* v. *National Casualty Co.*, 206 Mo.App. 67 [226 S.W. 1031], also relied on by the plaintiff, the agent had filled in a date in the application when the policy was to be effective. The applicant had agreed that the application was not to be binding until accepted by the company. The application was accepted and the policy issued, dated however, a month later than the date inserted by the agent in the application. the plaintiff was accidentally injured in the interim. The court held that the agent had apparent authority to determine the effective date of the application; that the contract commenced as of that date; that the effect of the proposal otherwise was merely to subject the proffered contract of insurance to the approval of the company. The court distinguished factual situations where there was no evidence that the insurance applied for would be effective from the date of the application. In *Douglass* v. *Mutual Ben. Health & Accident Assn.*, 42 N.M. 190 [76 P.2d 453], the facts showed that the powers of the agent were attempted to be narrowed by limitations not communicated to the applicant. It was held that, in the absence of express provisions indicating the effective date of the policy and the limitation on the agent's authority, the agent had apparent authority to determine the effective date of the policy and bind the company thereby. The factors which determined the defendant's liability in those cases are absent here. Where the applicant had notice, as in the present case, of the limitations on the agent's authority and of the effective date of the policy, it has been held that the insurer was not bound by any oral representation of an earlier effective date. (*Harris* v. *Mutual Ben. Health & Accident Assn.*, 187 Ark. 1038 [63 S.W.2d 975], *Rainsbarger* v. *Mutual Ben. Health & Accident Assn.*, 227 Iowa 1076 [289 N.W. 908].) In the case last cited a policy was issued under agreements and circumstances very similar to those in the present case, and a judgment dismissing the plaintiff's petition was affirmed. ▇ There are no facts here presented which would justify a finding of negligence, waiver, or estoppel on the part of the insurer. Delay alone is not sufficient to create a contract of insurance. (*Lucas* v. *Metropolitan Life Ins. Co.*, 14 Cal.App.2d 676, 680 [58 P.2d 934], citing cases.) Con-

sidering the geographical distances here involved, no more than a reasonable time elapsed between the date of the applications and the issuance of the policies. Neither the retention of the premium until return was tendered at the trial, nor the issuance of the policies after notice of the accidents, sufficed to impose liability prior to the date of the policies, in view of the statement in the applications that liability would not attach until the policies issued. The insured or the beneficiary could not have been misled by any act of the association.

Our conclusion is that the trial court correctly decided that the plaintiff was not entitled to recover on the contracts of insurance issued by the defendant.

The judgment is affirmed.

Gibson, C. J., Edmonds, J., and Traynor, J., concurred.

CARTER, J.—I dissent. The majority opinion is based primarily upon the proposition that the agent who solicited the insurance had no authority to fix the date at which the risk was assumed by the insured. Conceding that to be true, there still exists a logical basis upon which the liability of the insurer must be predicated. That basis is ignored by the majority opinion. The facts of the case are clear.

Plaintiff's husband, now deceased, was on July 17, 1940, solicited by a Mr. Abraham, soliciting agent of the defendant insurance company, for two health and accident insurance policies paying death benefits. Applications for the policies were signed by decedent at that time and he paid to Abraham $13 on account of the premium on each of the policies. Abraham dated the applications July 20, 1940, cashed the check, and on that date delivered the applications and the premium money, less his commission, to the Mutual Insurance Agency which was in charge of Mr. Hall, who was the general agent for defendant in Los Angeles, California, and authorized to accept premiums and applications. Defendant's Home Office is in Omaha, Nebraska. The list of the applications received by Hall, including that of decedent was dated July 30, 1940, and was received at the defendant's Home Office on August 2, 1940. The policies were issued on August 5, 1940, and delivered on August 6, 1940. Decedent was unconscious when the policies were delivered. The poli-

cies were issued solely upon the information set forth in the application.

On July 26, 1940, decedent suffered an injury as the result of a fall, and on July 30 was again injured from a fall. He died on August 6, 1940, from the latter injury. On July 30, 1940, decedent's wife wrote to Hall, defendant's general agent, advising of the injuries, and asked for claim blanks. The letter was received by Hall on August 2, 1940. Blanks were sent to her.

The applications on the face thereof contain among other things the following: "I, the undersigned hereby make application to . . . (defendant), for policy . . ., I understand and agree that this application shall not be binding upon the Association until the policy is issued to me." And also: "Do you hereby apply to . . . (defendant) for a policy issued solely and entirely in reliance upon the written answers to the foregoing questions, and do you agree that (defendant) is not bound by any statement made by or to any agent unless written herein? Yes." On the back of the application was advertising matter which included the following: "No Medical Examination Necessary" and "Insurance Policy. This policy goes into immediate effect from date of issue on accident and on sickness as plainly stated in the policy."

The policies stated that the benefits would be paid for loss of life resulting from an injury received during the term of the policy. The term of the policy was stated as commencing on August 5, 1940.

This action was commenced by plaintiff to reform the policies and recover the death benefits thereunder. Judgment was rendered for defendant and plaintiff appeals.

The established rules for the construction of insurance contracts must be kept in mind. Because contracts of insurance are not the result of negotiation, and are generally drawn by the insurer, any uncertainties or ambiguities therein are resolved most strongly in favor of the insured. (*Blackburn* v. *Home Life Ins. Co.*, 19 Cal.2d 226 [120 P.2d 31]; *Perkins* v. *Fireman's Fund Indemnity Co.*, 44 Cal.App.2d 427 [112 P.2d 670].) Where two interpretations equally fair may be made, that which affords the greatest measure of protection to the insured will prevail. (*Fageol T. & C. Co.* v. *Pacific Indemnity Co.*, 18 Cal.2d 731 [117 P.2d 661].)

From the foregoing facts it is clear that the contracts of insurance were consummated. The applications were sent to

defendant at its Home Office in Omaha, Nebraska. The premium was paid. They were there approved. Policies were issued on August 5, 1940. That the contract was complete and binding upon the insurer under those circumstances cannot be doubted. (See 14 Cal.Jur. 425-6.) Hence, the main issue is, when under the insurance contract the risk was assumed by the insurer; that is, did it commence at the date of the policies or prior thereto.

Applications for insurance have been referred to as offers or proposals for insurance on the part of the one to be insured. (14 Cal.Jur. 422.) The application becomes a part of the contract of insurance when the policy expressly so provides. (*Boyer* v. *United States F. & G. Co.*, 206 Cal. 273 [274 P. 57].) In the instant case the applications were by the policies expressly made a part thereof, and photostatic copies were affixed thereto.

Turning therefore to the applications, it appears that they do not expressly state when the insurance coverage was to commence. They do provide that decedent applies to defendant for certain designated policies, and at the end of each appears the notation "Total cost $39.50." Under that figure are the words "First Year." Thereafter it reads "Paid $13 Balance $26.50 (Payable 30-60 days) Date 7/20/1940—. The signature of the decedent applicant and the soliciting agent follow. The applications were signed on July 17, 1940; the date, July 20, 1940, was inserted therein by the soliciting agent, it being the time when he delivered the applications to Hall. A portion of the premium was paid on July 17, 1940, and according to the applications the balance could be paid on a time basis. It is a fair and reasonable inference from the foregoing that applications were being made for insurance for a year's term to commence upon July 17, 1940, if the insurer chose to accept the application and issue the policies. That it did so choose is apparent from the issuance of the policies. That interpretation clearly follows from the rule that "Where two interpretations equally fair may be made, that which affords the greatest measure of protection to the assured will prevail." (*Fageol T. & C. Co.* v. *Pacific Indemnity Co.*, 18 Cal.2d 731, 747 [117 P.2d 661].) Of course, an insurer can accept or reject an application for insurance, the same as any other person to whom an offer is made. But as will presently appear, the real question involved is, what

was actually done in the light of the proper construction of the documents in the case now before us.

It is urged that the foregoing construction is not permissible because of the above-quoted clause in the application that the application shall not be binding upon the insurer until the policy is issued. On the contrary that clause lends support to that construction. It is to be noted that the application is not to be binding until a policy is issued. The reasonable and fair interpretation of that clause is that the application shall not constitute a contract of insurance, or that there shall be no insurance in effect pending the application unless the policy is issued. As we have seen, the application is merely an offer or proposal, and it would not create a binding contract of insurance. But that does not mean that when the offer is accepted it would not cover risks as of the date that the application was made for insurance.

With respect to the notation on the back of the applications heretofore mentioned, suffice it to say that it was no part of the application and cannot be said to be binding upon decedent. The matter appearing upon the face of the application should control.

Each policy of insurance provides that it is issued in consideration of the statements made in the application and the payment of the premium, and that its term begins on the date thereof. It bears date of August 5, 1940. While it is true that the naming of August 5, 1940, as the date of the commencement of the term in the policy would appear to be an insufficient acceptance of the offer to purchase on the application for insurance as presented, inasmuch as such offer should be interpreted as requesting that the insurance commence on July 17, 1940, and therefore that no contract existed, the policy being merely a counter offer or proposal, we do not believe the policy may be so construed. The application was made a part of the contract of insurance and properly interpreted, contemplates that the risk was assumed as of July 17, 1940. This reasoning is further fortified by the fact that the policy was given in consideration of the statements in the application and the premium. The premium was paid. There is therefore an ambiguity on the face of the policy with reference to the effective date of the insurance coverage. Such ambiguity must be construed against the insurer in the light of the foregoing rules of construction. The result is that the application controls, and the issuance of

the policy was a sufficient acceptance of the application as correctly interpreted, and a contract was consummated giving protection from July 17, 1940. Assuming that the contract of insurance did not become a completed contract until it was issued and delivered on August 6, 1940, nevertheless the period during which the risk was assumed related back to July 17, 1940. It follows therefore that the injuries suffered by decedent which resulted in his death, having occurred after the effective date of the policies, the death benefits are payable thereunder.

The cases relied upon by defendant are not in point. The same factual situation was not involved in *Burch* v. *Hartford Fire Ins. Co.*, 85 Cal.App. 542, 543 [259 P. 1108]. In *Hansen* v. *Farmers Auto. Insurance Exchange*, 139 Cal.App. 388 [34 P.2d 188], no policy was ever issued upon the application, and it is otherwise distinguishable in respect to the wording of the application. The same comment applies to *Lucas* v. *Metropolitan Life Ins. Co.*, 14 Cal.App.2d 676 [58 P.2d 934], *Stark* v. *Pioneer Casualty Co.*, 139 Cal.App. 577 [34 P.2d 731], and *Toth* v. *Metropolitan Life Ins. Co.*, 123 Cal.App. 185 [11 P.2d 94].

It may be that a cursory reading of the application would lead one to the conclusion reached in the majority opinion that no ambiguity exists as to the effective date of the policy. However, the application states "I understand and agree that this *application* shall not be binding upon the association until the policy is issued to me." The clear implication and inference to be drawn from this statement is that, if and when the policy is issued, the *"application"* is *"binding."* The premium was paid and the policy was issued. It is conceded by the defendant that the policy could have been dated any day on or after the date the application was made. Since the application constitutes an offer and the issuance of a policy constitutes the acceptance, the obligation created by the offer and acceptance relates back to the date of the offer in the absence of an express agreement to the contrary. There was no express agreement in this case. Therefore, upon the issuance of the policy, the liability of the insurance company became effective as of July 17, 1940, the date the application was made.

Even if the application is susceptible of a different interpretation, under the rule announced in the Fageol case above

cited, *the interpretation which affords the greatest measure of protection to the assured should prevail.* This rule is nullified by the majority decision in this case.

In my opinion the judgment should be reversed.

Curtis, J., and Peters, J. pro tem., concurred.

Appellant's petition for a rehearing was denied June 14, 1943. Curtis, J., Carter, J., and Schauer, J., voted for a rehearing.